NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RICARDO R., *Appellant*,

*v.*

MARIA A., I.R., A.R., *Appellees*.

No. 1 CA-JV 17-0007
FILED 7-11-2017

Appeal from the Superior Court in Maricopa County
No. JS517715
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Edward D. Johnson, Peoria
*Counsel for Plaintiff/Appellant*

Maria A., Phoenix
*Appellee*

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge James P. Beene joined.

**T H U M M A**, Judge:

¶1          Ricardo R. (Father) appeals the superior court's order terminating his parental rights. For the following reasons, the order is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2          Father and Maria A. (Mother) are the biological parents of I.R., born in 2006, and A.R., born in 2007. Parents were never married. Father is currently in federal prison in Minnesota for a felony drug conviction. Mother is now married and the children live with her, her husband (Stepfather) and a younger half-brother. Stepfather intends to adopt the children.

¶3          In August 2015, Mother filed a petition for termination of Father's parental rights alleging abandonment and felony imprisonment for a period of years. At a December 2016 severance adjudication, Father admitted he had been incarcerated since June 2013, and before his incarceration, his last contact with the children was in 2012. Father's anticipated release date is not until 2026. Father claimed, however, that he attempted to send financial support and letters to the children for a period of time, but Mother refused to acknowledge receipt of the items.

¶4          The court terminated Father's parental rights to the children based on abandonment and felony imprisonment for a period of years, finding termination was also in the best interests of the children. This court has jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and 12-120.21(A) and Ariz. R.P. Juv. Ct. 103-104 (2017).[2]

---

[1] On appeal, this court views the evidence in the light most favorable to affirming the court's findings. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250 ¶ 20 (2000).

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

¶5        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

**I.        Felony Imprisonment For A Period Of Years.**

¶6        A parent's rights may be terminated if "the parent is deprived of civil liberties due to the conviction of a felony . . . [and] the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4). *Michael J.* sets forth non-exclusive factors to consider in determining if the length of felony sentence would deprive a child of "a normal home for a period of years":

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

196 Ariz. at 251–52 ¶ 29.

¶7        Father concedes that he is deprived of civil liberties due to a felony conviction and that his prison term will deprive the children of a normal home for a period of years. Nevertheless, Father asserts the court erred by failing to articulate sufficient factual findings to support the statutory ground for severance. "[F]indings of fact and conclusions of law should be sufficiently specific to enable the appellate court to provide

effective review . . . . Findings must include all of the ultimate facts—that is, those necessary to resolve the disputed issues." *Ruben M. v. Ariz. Dept. of Econ. Sec.*, 230 Ariz. 236, 241 ¶ 25 (2012). On this record, there was clear and convincing evidence to support a finding that Father's prison sentence will deprive the children of a normal home for a period of years.

¶8        Mother testified that Father was arrested on an outstanding warrant in December 2011. When Father was released from jail, he moved to Minnesota and has not visited with the children since 2012. Mother also testified that Father has not inquired about the children's schooling or health, and has not provided clothing, money, or "any other type of support items for the children." Mother learned of Father's current incarceration in 2013. She testified that he was incarcerated in Minnesota for possession of drugs with a weapon and is serving a 15-year prison term with an anticipated release date in December 2026. By that time, the children will be adults.

¶9        Father confirmed the length of his prison sentence, but stated he has petitioned for clemency and is participating in in-prison programs that may reduce his incarceration time. He also claimed that in a low-security prison, he can "get visitation and contact visits where [he] can play with [his] children," and can earn money to provide child support. Father, however, has not provided any financial support during his incarceration. Father further testified that, during his first year in prison, he attempted to send cards to the children, but after Mother claimed she had not received them, Father stopped trying.

¶10        After the close of evidence, the court ruled as to the ground of incarceration, A.R.S. § 8-533(B)(4), that:

> it's undisputed here that Father's incarceration will go beyond when these girls are 18, and even in the best of circumstances, they'll be pretty close to 18, maybe still at 18. It's not for us to speculate whether he can get out early or his sentence may run full term. It is impossible with the sentence that he has for the kids to have any sort of normal home with this particular parent, and notably, that he's incarcerated in Minnesota and they live here in Arizona. So even under the best circumstances, the visits with Father would be not as frequent as he has with his other children.

The court continued that,

> before Father was arrested in June 2013 . . . he was living in Minnesota at his choice, and he would visit [the children] when he came back to town. And so, those, at best, maybe [were] one a month, but there's a dispute as to that. Mother's testimony was quite different. But even those sporadic relationships don't strike me as establishing a normal child relationship here. And as far as the cards and letters go, even if all those things happen, I'm not sure . . . they would carry the day in trying to maintain a normal parental relationship.

In making these findings, the court concluded Mother established "length of incarceration by clear and convincing evidence as grounds for termination."[3] On this record, there is ample evidence to support that finding, meaning Father has shown no error. *See Michael J.*, 196 Ariz. at 251 ¶ 29.

## II.     Best Interests.

¶11      Father also challenges the court's best interests conclusion, again contending the court erred by failing to provide sufficient factual findings to support the ruling. As applicable here, "[t]o support a finding that termination is in the child's best interests, [Mother] must prove that the child will affirmatively benefit from the termination." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50 ¶ 19 (App. 2004). The best interests requirement may be met if, for example, Mother proves that a current adoptive plan exists for the child, or even that the child is adoptable. *JS–500274*, 167 Ariz. 1, 6 (1990). "[A] juvenile court may conclude that a proposed adoption benefits the child[ren] and supports a finding that severance is in the child[ren]'s best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 1 (2016).

---

[3] Given Father's argument on appeal and the conclusory nature of the minute entry, if the superior court had not made these findings on the record, it is not clear that the minute entry alone would have provided the requisite detail for the required findings. *See, e.g.*, A.R.S. § 8–538(A); Ariz. R.P. Juv. Ct. 66(F); *Ruben M.*, 230 Ariz. at 240 ¶ 22.

¶12    Mother testified the children have lived with Stepfather for seven years and currently live in a happy family unit with Mother, Stepfather, and a younger half-brother. The children look to Stepfather as a father figure and the family is currently "going through the adoption process." Mother indicated that adoption would bring cohesion to the family in a variety of ways, and will provide the children emotional and financial security.

¶13    Proceeding by avowal, confirmed by Stepfather's testimony, the guardian ad litem told the court:

> [Stepfather] has . . . been a father figure to the girls for [seven] years. He is bonded with the girls. The girls view him as their father. He has provided financial support, emotional support, psychological support for the girls for [seven] years. Additionally, he is more than willing to adopt and looks forward to adopting.
>
> . . . .
>
> [S]tepfather has been a good parent and is trustworthy and . . . has a good relationship with the girls.

¶14    The court found that the children "want to be a part of the family . . . where they live [] now, everyday," and that the children consider Stepfather to be the father-figure in their lives. The court also noted the bond the children have with Stepfather and the family's intention for Stepfather to adopt the children. The court then pronounced that it found severance was in the best interests of the children by a preponderance of the evidence. In doing so, the court tacitly found that formalizing Stepfather's legal and financial responsibility through adoption after severance would provide a real benefit to the children. *Demetrius L.*, 239 Ariz. at 5-6 ¶¶ 17, 20. As such, there is sufficient evidence supporting the court's finding that termination of Father's parental rights is in the children's best interests, and Father has failed to show error.

**CONCLUSION**

¶15      The superior court's order terminating Father's parental rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA